UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIE B. OLGIN,<br>25006 Paseo Cipres<br>Lake Forest, CA 92630<br><br>    Plaintiff,<br><br>          v.<br><br>JEH JOHNSON,<br>  Secretary of the Department of<br>  Homeland Security,<br>  12th & C Street, S.W.<br>  Washington, DC 20024,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civ. Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1.) Natalie B. Olgin, a woman of Hispanic descent, is an accomplished GS-13 Special Agent at the Department of Homeland Security (DHS), Office of Inspector General (OIG); Ms. Olgin would be a GS-14 Special Agent except for defendant's discrimination and retaliation toward her.

2.) Prior to joining DHS OIG, Ms. Olgin worked for U.S. Customs and Border Protection and its predecessor agencies, both as a Border Patrol Agent and as a Special Agent. In every position she has held in her 19 year federal career, Ms. Olgin has routinely earned high marks and awards for her outstanding performance.

3.) Despite having worked in the rough and tumble world of border patrol for 6 years, upon joining DHS OIG in 2012, Ms. Olgin was subjected to overt sexism and racism the likes of which she had never experienced.

4.) In 2014, Ms. Olgin reported Los Angeles Field Office Special Agent in Charge (SAC) Roger Merchant (Caucasian male) to senior officials in DHS OIG Headquarters in Washington, D.C., for Mr. Merchant's overt misogyny and racism. This led Assistant Inspector General for Investigations (AIGI) John Dupuy (Caucasian male) and Deputy AIGI Steven Laferty (Caucasian male) to open an investigation and confirm that Mr. Merchant openly subjected subordinates to vulgar and degrading comments about women's bodies and the supposed inferiority of women to men. Among other outrageous remarks, Mr. Merchant said that female colleagues and witnesses were "hot," mocked Ms. Olgin for being her family's primary breadwinner, and made insulting comments about minorities and homosexuals.

5.) Mr. Merchant even tried to engage Ms. Olgin's male colleagues in his misogynistic banter and became angry when they refused to participate.

6.) DAIGI Laferty and AIGI Dupuy from DHS OIG Headquarters in Washington, D.C., oversaw the investigation into Mr. Merchant. They repaid Ms. Olgin for her complaint and protected EEO activity by reassigning her <u>directly</u> under Mr. Merchant and removing two supervisors who were sympathetic to her from her chain of command. They also restructured Mr. Merchant's supervisory chain so that he began reporting to them instead of to the Director of Operations for the West, who knew about Mr. Merchant's behavior and was trying to address it.

7.) Ms. Olgin and the other agents who had given testimony in support of her complaint were so concerned about Mr. Merchant's history of volatile behavior and the likelihood that he would take retaliatory action against them, one wore his protective vest to work and another reported continually looking to see whether Mr. Merchant was carrying his service-issued weapon. All tried to work outside of the office and avoid Mr. Merchant as much as possible.

8.) Within weeks of the fact-finding inquiry, and Ms. Olgin filing a formal EEO complaint, Mr. Merchant arranged with AIGI Dupuy and Deputy AIGI Laferty to cancel a pending vacancy announcement for a GS-14 Assistant Special Agent in Charge (ASAIC) position in the Los Angeles Field Office for which Ms. Olgin was one of only two candidates on the "best qualified" list.  The other candidate did not want to be stationed in Los Angeles, where the job was located, and withdrew his application.  Accordingly, Ms. Olgin was *the only choice* for the position and would have been selected but for defendant's discrimination and reprisal.

9.) This case arises under Title VII of the Civil Rights Act of 1964, as amended, 52 U.S.C. §2000e-16 (incorporating 42 U.S.C. §§2000e-2, e-3), and challenges the discrimination and retaliation toward Ms. Olgin committed by or at the direction of defendant.  By way of relief, Ms. Olgin seeks:  a.) a declaration that defendant violated her civil rights and an injunction to prevent further violations; b.) retroactive promotion to the GS-14 position of Assistant Special Agent in Charge, Resident Agent in Charge, or an equivalent position in the Los Angeles Office; c.) backpay for the salary increase and commensurate benefits she would have received had she been selected for the ASAIC position; d.) a guarantee that Roger Merchant will remain permanently out of her management chain of command; and e.) compensatory damages.  Ms. Olgin also seeks an award of the attorneys' fees and costs incurred in the prosecution of this action and for proceedings at the EEOC and the administrative process that preceded it.

## Parties, Jurisdiction, and Venue

10.) Plaintiff Natalie Olgin is a GS-13 Special Agent with the Department of Homeland Security, Office of Inspector General.  She is a female of Hispanic descent who engaged in protected activity and resides at the address recited in the caption of this Complaint.

11.) Defendant Jeh Johnson is the Secretary of the Department of Homeland Security (DHS), and is sued in his official capacity only. The DHS Office of Inspector General conducts and supervises independent audits, investigations, and inspections of programs and operations of DHS in order to identify and deter the fraud, waste, and abuse of taxpayer funds invested in Homeland Security.

12.) Jurisdiction of this Court is based upon 28 U.S.C. §1332 and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(c)). The discriminatory and retaliatory actions that are at issue were taken by or at the direction of DHS OIG AIGI Dupuy and/or DAIGI Laferty from their duty stations in OIG Headquarters in Washington, D.C. Those officials oversaw the investigation triggered by Ms. Olgin's complaint of discrimination; ignored its findings; and took the retaliatory actions of reassigning Ms. Olgin under Mr. Merchant's direct supervision, restructuring her supervisory chain of command, and cancelling the ASAIC vacancy announcement. Venue lies here pursuant to 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because the discriminatory and retaliatory actions of defendant that are at issue occurred in this judicial district, and because the convenience of the parties and witnesses, the ease of access to sources of proof, and the interests of justice strongly favor the case being heard here.

**Statement of Facts**

Background

13.) Ms. Olgin has had a long and distinguished federal law enforcement career, which began in 1996 and has included positions as a Border Patrol Agent, a Special Agent in the U.S. Customs Service, a Special Agent with the U.S. Border Protection Office of Internal Affairs, and

her present job as a Special Agent with DHS OIG. She also served in the Army Reserves from 1990 to 1998.

14.)    Throughout her 19-year federal law enforcement career, Ms. Olgin has successfully worked with many different managers, supervisors, and colleagues without incident or complaint. As is true in law enforcement, the overwhelming majority of them were male. Until she joined DHS OIG in 2012, however, she had never been subjected to the level of sexism and race-based hostility that she experienced at the hands of SAC Roger Merchant.

<u>Mr. Merchant's Shocking Display of Misogyny and Bigotry</u>

15.)    In July of 2012, when Ms. Olgin came on board at DHS OIG, Mr. Merchant was the Resident Agent in Charge (RAC) of the Los Angeles Investigative Office. He initially served as her first-level supervisor and later became her second-level supervisor when the office was reclassified as a Field Office and he was promoted to Special Agent in Charge (SAC). Soon after, Vincent Roth (Caucasian male) was assigned to serve as the first-level supervisor for all of the agents in the LA Field Office. Mr. Roth was physically located in the agency's Seattle, Washington office.

16.)    Within months of reporting for duty, Ms. Olgin witnessed Mr. Merchant making derogatory comments about women and minorities and engaging in offensive behavior.

17.)    On one occasion, on March 5, 2013, Mr. Merchant was speaking to two male Special Agents about a female football player who was trying out for a position as a kicker in the National Football League. During the conversation, which took place in the presence of Ms. Olgin, Mr. Merchant ridiculed the female athlete and made a generalized statement about women being inferior to men.

18.) Not long after that incident, Mr. Merchant asked Ms. Olgin how much money her husband made; Ms. Olgin reluctantly acknowledged that she earned a higher salary than he did. Later, in front of Ms. Olgin's male colleagues, Mr. Merchant referred to her husband as her "wife," apparently making a crude reference to her status as the family breadwinner.

19.) Mr. Merchant did not limit his display of misogyny and racism to Ms. Olgin; he forced the male agents in the LA office to listen to his ugly comments and even tried to recruit them to participate.

20.) According to Special Agent Carmen Petrillo (Caucasian male), who worked under Mr. Merchant's supervision in the LA office from June of 2012 until January of 2014, Mr. Merchant routinely made offensive comments about homosexuals, minorities, and females.

21.) On one particular occasion, Mr. Merchant questioned Mr. Petrillo about a female witness he had interviewed, and asked if she was "hot" and "had big tits." When Mr. Petrillo attempted to avoid answering the question, Mr. Merchant responded, "You interviewed her for two fucking hours and you didn't notice if she had big tits?"

22.) Mr. Petrillo also repeatedly heard Mr. Merchant make inappropriate comments about the physical attractiveness of a female Assistant United States Attorney and a female Special Agent in the Headquarters office.

23.) On another occasion, Mr. Merchant performed a vulgar, sexually suggestive impersonation of a homosexual man in front of Mr. Petrillo and another male agent. When Mr. Petrillo expressed his discomfort, Mr. Merchant asked Mr. Petrillo whether he had friends or family members who were gay.

24.) Later, when Mr. Petrillo met privately with Mr. Merchant and asked that he be excluded from future discussions of that sort, Mr. Merchant approached him aggressively and

screamed, "Who the fuck do you think you are? I'm you're fucking [second] line supervisor. Get the fuck out of my office!"

25.)   Mr. Merchant was just as brazen about his bigotry. Once, upon seeing Special Agent Troy Andrade's degree from the University of California at Berkley hanging in his office, Mr. Merchant asked whether he had been "affirmative action." Mr. Andrade is a minority.

26.)   Another time, Mr. Merchant criticized a minor grammatical error on two reports that Ms. Olgin had submitted by saying that "the errors were due to her E…" and then reflected out loud that he "shouldn't say that." It was clear to Ms. Olgin that Mr. Merchant was going to say ESL, a common acronym meaning English as a Second Language – a reference to Ms. Olgin's Hispanic heritage.

### The 2013 ASAIC Vacancy

27.)   In June of 2013, a vacancy was announced for an Assistant Special Agent in Charge (ASAIC) position in the DHS OIG Los Angeles Field Office. The ASAIC would have been the only individual in the LA office who reported directly to Mr. Merchant and was engaged in day-to-day management along with him.

28.)   Mr. Merchant actively encouraged the two white male agents in the LA office to apply while pointedly ignoring Ms. Olgin. In fact, Mr. Merchant placed so much pressure on one of the male agents that, despite his disinterest in becoming Mr. Merchant's direct subordinate, the agent applied out of fear of retaliation.

29.)   Although Ms. Olgin was interested in the ASAIC position, she did not apply to the 2013 vacancy because it was clear to her that Mr. Merchant was not going to select her. Ultimately, no one was selected and the position was not filled at that time.

### The 2014 ASAIC Vacancy

30.)   One year later, in June of 2014, the ASAIC position for the LA office was re-announced. As was true the year before, Mr. Merchant was on the selection panel for the position.

31.)   That same day, Ms. Olgin learned that Mr. Merchant had approached one of her white male colleagues and encouraged him to apply for the job. Even though Ms. Olgin had significantly more experience than this agent, Mr. Merchant failed to even mention the ASAIC position to her, much less solicit her application.

32.)   Nevertheless, Ms. Olgin timely applied to the ASAIC position and was rated "best qualified" by DHS OIG human resources.

33.)   Receiving a rating of "best qualified" meant that Ms. Olgin was eligible to be selected. She was one of only two applicants on the "best qualified" list and was poised to be selected, not only because she was vastly more qualified than the other applicant but because she was already in the Los Angeles office. The other candidate had made it known that he did not want to be located in LA and withdrew his name from consideration.

34.)   Around this same time, Mr. Merchant began avoiding all interaction with Ms. Olgin. He went so far as to ask another (Caucasian male) agent for details about one of her cases, even though that agent's office was directly beside hers and the male agent did not have the information Mr. Merchant sought.

### The August 2014 Fact-Finding Inquiry

35.)   On June 23, 2014, after the ASAIC vacancy was announced and while the selection process was ongoing, Ms. Olgin made protected EEO disclosures about Mr. Merchant's discriminatory and harassing behavior. Although she was fearful of retaliation from Mr. Merchant, Ms. Olgin routed her written complaint to DHS OIG ASAIC Roth, who forwarded it to Steve

Marquette, the Director of Operations for the West, both of whom were in her chain of command at that time. Mr. Marquette, in turn, forwarded the complaint to senior officials in DHS OIG Headquarters in Washington, D.C.

36.) Upon receiving Ms. Olgin's complaint, DAIGI Laferty specifically appointed an Employee Relations Specialist named Page Daggett to conduct a fact-finding inquiry into Ms. Olgin's allegations. Ms. Daggett was stationed in DHS Headquarters in Washington, D.C. and her assignment was to investigate Ms. Olgin's allegations thoroughly and report her findings to Mr. Laferty or another senior DHS OIG official in Headquarters.

37.) Ms. Daggett traveled to LA in early August of 2014 and interviewed Ms. Olgin and the other agents in the LA office. The other agents confirmed Ms. Olgin's allegations that Mr. Merchant frequently made startling racially and sexually charged comments, and that he had pressured two white male agents to apply for the ASAIC positions while ignoring her.

38.) The written report of the fact-finding inquiry specifically corroborated that Mr. Merchant made a comment about women being inferior to men, and that he made other comments about women "that were inappropriate, disrespectful and/or sexually suggestive in nature." It also found that Mr. Merchant yelled at Ms. Olgin; used vulgar language in the office; actively encouraged two male Special Agents to apply to ASAIC vacancies; and asked male agents about Ms. Olgin's cases rather than coming to her.

39.) The report also contained a section entitled "Safety Concerns" in which the investigator recounted conversations she had with Ms. Olgin and two male agents from the LA Field Office following the fact-finding investigation. All three agents reported that they had been avoiding the office due to "personal safety concerns" about Mr. Merchant's behavior. One of the

male agents even stated that he had worn his protective vest to work because he was concerned about Mr. Merchant's history of volatile conduct.

### Defendant's Decision to Place Ms. Olgin Directly Under Mr. Merchant

40.) The report of the HR fact-finding inquiry was provided to and reviewed by AIGI Dupuy, DAIGI Laferty, and Assistant Inspector General for Management (AIGM) Russ Barbee, all of whom are Caucasian males stationed in Washington, D.C.

41.) DAIGI Laferty and AIGI Dupuy knew that Ms. Olgin's June 2014 complaint was protected EEO activity because she had specifically alleged that Mr. Merchant was engaged in employment actions that were sexually and racially discriminatory. They were also aware at that time that Ms. Olgin was pursuing an EEO complaint involving claims of sex and race discrimination against Mr. Merchant.

42.) DAIGI Laferty admitted that "the fact finding found that there was evidence to suggest that Mr. Merchant made inappropriate comments in the office, yelled in the office, and used vulgar language in the office." However, he duplicitously claimed that the investigation "did not adequately substantiate the alleged misconduct and that no disciplinary action was warranted." Indeed, the only punitive action defendant took was against Ms. Olgin.

43.) Incredibly, DAIGI Laferty even called Ms. Olgin and the other agents in the LA Office and tried to get them to disavow the information in Ms. Daggett's report.

44.) Rather than remove Ms. Olgin from Mr. Merchant's supervision, as she had requested, in September of 2014, AIGI Dupuy changed the LA office reporting structure to eliminate ASAIC Roth from the LA agents' chain of command. This resulted in Ms. Olgin reporting <u>directly</u> to Mr. Merchant; likewise for the two agents who provided support for her complaint. Ms. Olgin remained under Mr. Merchant's supervision until he was recently

reassigned. On information and belief, the reasons for Mr. Merchant's reassignment were unrelated to Ms. Olgin.

45.) At the same time, AIGI Dupuy changed *Mr. Merchant's* supervisory chain of command so that Mr. Merchant would report directly to him instead of to Mr. Marquette, the Director of Operations for the West.

46.) Mr. Marquette had advocated for Ms. Olgin to be removed from Mr. Merchant's chain of command as the agency had done for other white male agents who made requests to change supervisors, including Mr. Merchant himself.

47.) ASAIC Roth, who had defended Ms. Olgin against Mr. Merchant, also submitted a request to AIGI Dupuy asking that he and the LA agents (including Ms. Olgin) be removed from Mr. Merchant's supervision. Ultimately, only Mr. Roth and the Seattle and Bellingham, Washington offices were removed. The LA office, and specifically Ms. Olgin, were placed under Mr. Merchant's direct supervision.

<u>The Retaliatory Cancellation of the 2014 ASAIC Vacancy</u>

48.) On September 11, 2014, immediately after the fact-finding inquiry and within weeks of Ms. Olgin filing her formal EEO complaint, she was informed that the vacancy announcement for the ASAIC position in the LA office had been cancelled by AIGI Dupuy.

49.) As attested to by Mr. Marquette, Mr. Merchant had gone over Mr. Marquette's head and worked with AIGI Dupuy and DAIGI Laferty to cancel the vacancy announcement "because there was only one candidate to interview and that was [Ms. Olgin] … the other Best Qualified candidate did not want to move to LA."

50.) Although the agency has asserted that several other ASAIC vacancies were cancelled at the same time, on information and belief, the other offices where those cancellations

11

occurred have GS-14 Senior Special Agents (SSA's) performing as de facto ASAIC's, and those GS-14 SSA's were the candidates who had applied for the ASAIC positions.

### Exhaustion of Administrative Remedies

51.) No later than June 30, 2014, Ms. Olgin initiated the informal administrative EEO complaints process over the actions taken by Mr. Merchant that were creating a discriminatory hostile work environment. On August 5, 2014, she filed a formal EEO complaint of discrimination based on sex (female) and race (Hispanic), and later amended her complaint to add claims over defendant's refusal to remove her from Mr. Merchant's chain of command, and its decision to cancel the ASAIC vacancy for the LA Field Office.

52.) Defendant accepted and investigated all of Ms. Olgin's claims, and issued a Report of Investigation.

53.) By the foregoing actions and all others required of her by law and regulation, Ms. Olgin has exhausted the administrative remedies available to her.

### COUNT I

### (Retaliation – Non-Selection)

54.) Plaintiff repeats the allegations contained in paragraphs 1 through 53 above, as though fully set forth here.

55.) Plaintiff engaged in protected EEO activity by opposing defendant's unlawful employment practices beginning no later than June 23, 2014, when she submitted a written complaint to defendant alleging that Mr. Merchant had engaged in discriminatory employment actions on the basis of race and sex.

56.) Plaintiff participated in protected EEO activity beginning no later than June 30, 2014, when she sought EEO counseling; on August 11, 2014 when she filed a formal EEO

complaint; and continuing thereafter when she pursued the formal administrative EEO complaints process.

57.) On June 19, 2014, Plaintiff timely applied for the position of Assistant Special Agent in Charge of the Los Angeles Field Office (GS-14). She was rated, along with another candidate, as "best qualified" for the position. Ultimately, the other applicant withdrew and she was the only candidate left on the "best qualified" list.

58.) Defendant cancelled the selection for pretextual reasons because Plaintiff was the only candidate who was qualified, willing, and able to perform the job.

59.) Plaintiff would have been selected for the ASAIC position had it not been cancelled for pretextual reasons.

60.) In cancelling the vacancy announcement, and thereby preventing Plaintiff from being promoted to GS-14, defendant took materially adverse action against Plaintiff that would dissuade a reasonable employee from engaging in protected EEO activity.

61.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, by retaliating against plaintiff for engaging in the foregoing protected EEO activity in taking the foregoing action.

62.) Defendant's violation of Plaintiff's civil rights caused Plaintiff to suffer injury to her career and professional reputation, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, and loss of enjoyment of life.

## COUNT II

### (Sex Discrimination – Non-Selection

63.) Plaintiff repeats the allegations contained in paragraphs 1 through 62 above, as though fully set forth here.

64.) Plaintiff is a woman.

65.) On June 19, 2014, Plaintiff timely applied for the position of Assistant Special Agent in Charge of the Los Angeles Field Office (GS-14). She was rated, along with another candidate, as "best qualified" for the position. Ultimately, the other applicant withdrew and she was the only candidate left on the "best qualified" list.

66.) Defendant cancelled the selection for pretextual reasons because Plaintiff was the only candidate who was qualified, willing, and able to perform the job.

67.) Prior to the vacancy announcement being cancelled, SAC Merchant had inappropriately encouraged Plaintiff's male colleagues to apply for the ASAIC position while intentionally ignoring her.

68.) Plaintiff would have been selected for the ASAIC position had it not been cancelled for pretextual reasons.

69.) In cancelling the vacancy announcement, and thereby preventing Plaintiff from being promoted to GS-14, defendant took adverse employment action against Plaintiff that affected the terms and conditions of her employment.

70.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, in taking the foregoing action.

71.) Defendant's violation of plaintiff's civil rights caused Plaintiff to suffer injury to her career and professional reputation, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, and loss of enjoyment of life.

## COUNT III

### (Race Discrimination – Non-Selection)

72.) Plaintiff repeats the allegations contained in paragraphs 1 through 71 above, as though fully set forth here.

73.) Plaintiff is of Hispanic descent.

74.) On June 19, 2014, Plaintiff timely applied for the position of Assistant Special Agent in Charge of the Los Angeles Field Office (GS-14). She was rated, along with another candidate, as "best qualified" for the position. Ultimately, the other applicant withdrew and she was the only candidate left on the "best qualified" list.

75.) Defendant cancelled the selection for pretextual reasons because Plaintiff was the only candidate who was qualified, willing, and able to perform the job.

76.) Prior to the vacancy announcement being cancelled, SAC Merchant had inappropriately encouraged Plaintiff's Caucasian colleagues to apply for the ASAIC position while intentionally ignoring her.

77.) Plaintiff would have been selected for the ASAIC position had it not been cancelled for pretextual reasons.

78.) In cancelling the vacancy announcement, and thereby preventing Plaintiff from being promoted to GS-14, defendant took adverse employment action against plaintiff that affected the terms and conditions of her employment.

79.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, in taking the foregoing action.

80.) Defendant's violation of Plaintiff's civil rights caused Plaintiff to suffer injury to her career and professional reputation, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, and loss of enjoyment of life.

## COUNT IV

**Reprisal – Undesirable Reassignment/Change in Reporting Structure**

81.) Plaintiff repeats the allegations contained in paragraphs 1 through 80 above, as though fully set forth here.

82.) Plaintiff engaged in protected EEO activity by opposing defendant's unlawful employment practices beginning no later than June 23, 2014, when she submitted a written complaint to defendant alleging that Mr. Merchant had engaged in discriminatory employment actions on the basis of race and sex.

83.) Plaintiff participated in protected EEO activity beginning no later than June 30, 2014, when she sought EEO counseling; on August 11, 2014 when she filed a formal EEO complaint; and continuing thereafter when she pursued the formal administrative EEO complaints process.

84.) Following Plaintiff's protected activity, defendant not only failed to remove her from Mr. Merchant's supervision, it changed the LA Field Office reporting structure to cause Plaintiff to report directly to Mr. Merchant, and it removed two favorable supervisors from her chain of command. Defendant took or failed to take these actions despite having knowledge from its own internal investigation about Mr. Merchant's discriminatory and hostile behavior. Defendant also had knowledge of Plaintiff's fear that Mr. Merchant might pose a threat to her personal safety after she raised her complaint.

85.) By the foregoing actions, defendant took materially adverse action against Plaintiff that would dissuade a reasonable employee from making or supporting a charge of discrimination or opposing unlawful employment practices.

86.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, in taking the foregoing action.

87.) Defendant's violation of Plaintiff's civil rights caused Plaintiff to suffer injury to her career and professional reputation, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, and loss of enjoyment of life.

**COUNT V**

**(Sex and Race Discrimination – Hostile and Abusive Work Environment)**

88.) Plaintiff repeats the allegations contained in paragraphs 1 through 87 above, as though fully set forth here.

89.) Plaintiff is a Hispanic female.

90.) Beginning no later than March 5, 2013, defendant intentionally subjected Plaintiff to a discriminatory hostile and abusive work environment by the following actions, among others: ridiculing women by stating that they are inferior to men; insulting her "ESL" grammar and language abilities; making crude comments about the physical appearance of women in her presence and/or the presence of her male colleagues; making disparaging remarks about minorities in her presence and/or the presence of her Caucasian colleagues; questioning her about her husband's income; referring to her husband as her "wife"; pressuring male co-workers to apply for promotion while pointedly ignoring her; and asking male co-workers about her cases rather than coming to her.

91.) By the foregoing actions and others, defendant took adverse employment action against Plaintiff by subjecting her to a severe and pervasive hostile and abusive work environment, and discriminated against Plaintiff because of her sex and race, and thereby materially and

adversely altered the terms and conditions of her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

92.) Defendant's violation of Title VII caused Plaintiff to suffer injury to her career and professional reputation, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Natalie B. Olgin respectfully requests that the Court enter judgment in her favor and award her the following relief:

A. An Order declaring that defendant violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and restraining and enjoining defendant from further violations.

B. Promotion to ASAIC, Resident Agent in Charge, or an equivalent position in the Los Angeles Investigative Office, retroactive to June of 2014, or the date that the selection for that position would have occurred but for defendant's illegal actions.

C. Backpay at the GS-14 grade level and corresponding benefits retroactive to June of 2014, or the date that the selection for that position would have occurred but for defendant's illegal actions.

D. A guarantee that Mr. Merchant will remain outside of Plaintiff's supervisory chain of command on a permanent basis.

E. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation and career opportunities, and loss of enjoyment of life caused by defendant's unlawful actions.

F. Attorneys' fees and costs.

G. Such other relief as may be just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100

_____
Molly E. Buie, Esq.
 D.C. Bar No. 483767
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200
Counsel for Plaintiff